620 So.2d 412 (1993)
NATCHITOCHES PARISH SCHOOL BOARD, Plaintiff-Appellee,
v.
H.C. SHAW, et al., Defendants-Appellees,
American Indemnity Company, Defendant-Appellant.
No. 92-1229.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
Rehearing Denied July 13, 1993.
Andrew E. Schaffer, Alexandria, Donnie L. Ellerman, Winnsboro, for H.C. Shaw, et al.
John Gutierrez McLure, Alexandria, for American Indem. Co.
Tama Blanchard Thomas, Natchitoches, for Meritplan Ins. Co.
Benjamin Franklin Davis, Robert A. Knight, Metairie, for Davlin Paint Co., Inc.
Before GUIDRY and WOODARD, JJ., and CULPEPPER, J. Pro Tem.
GUIDRY, Judge.
This case arises from a roofing construction contract executed between plaintiff, the Natchitoches Parish School Board (the Board), and one of the defendants, H.C. Shaw d/b/a Winnsboro Roofing (hereafter Shaw), for the replacement of the St. Matthew Junior High School roof.
The sole issue on appeal is whether a comprehensive general liability insurance policy (CGL) issued to Shaw by American Indemnity Company (American) provides coverage for Shaw's obligation to indemnify his performance and payment surety, Meritplan Insurance Company (Meritplan), for legal and investigative costs. The trial court held that American's policy covered Shaw's indemnification obligation under the "Broad Form Comprehensive General Liability Endorsement", specifically the section dealing with contractual liability coverage. American appeals. We affirm.
In the fall of 1986, the Board advertised for bids for the construction of the new St. Matthew roof. The design, which did not require removal of the existing roof, consisted of one-half inch thick composite fiber board screwed into the existing roof. The separate sheets of fiberboard were to be attached at the seams with duct tape. Then, the fiberboard would be covered by two layers of Davlin 900, a waterproofing sealant, and two layers of Davlin 510, a sun-protective coating. The Board accepted Shaw's bid by issuance of a purchase order dated October 28, 1986. On November 11, 1986, Meritplan issued a performance and payment bond to Shaw for this project. Meritplan and Shaw had previously executed a "General Indemnity Agreement" which obligated Shaw, in pertinent part, to "... indemnify and save harmless *413 the Surety from and against any and all demands, liabilities, loss, costs, damages, or expenses of whatever nature or kind, including fees of attorneys and all other expenses, including but not limited to cost and fees of investigation ...".
Construction commenced in mid-November of 1986. Shaw's construction crew attached the fiberboard, duct tape, both layers of Davlin 900 sealant and one layer of Davlin 510 coating. Due to the prospect of inclement weather, Shaw decided to wait until after the forecasted rain to apply the final layer of Davlin 510. This decision was based on a discussion with Bob Bailey, the seller of the construction material, and Frank Brooks, a roofing consultant, who both represented to Shaw that the fiberboard roof would be waterproof after the application of the first layer of Davlin 900. The rainstorm caused the roof to leak along the fiberboard seams over which the duct tape was placed. Shaw replaced the duct tape with a cloth mesh and re-covered the seams with sealant. This effort did not prevent the roof from leaking. Several other attempts were made to cure the defect, but none were successful. Finally, on January 24, 1987, Shaw ceased his attempts to fix the roof because he realized that further efforts would be fruitless. The roof was never completed, and Shaw was never paid for his work. The school building, which was rendered unusable, was eventually abandoned by the Board.
In February, 1989, the Board sued Shaw, Alice Shaw (his wife), Meritplan, Urethane Foam Consultants, Inc., Coatings Distributors, Inc., Frank Brooks and Bob Bailey. Meritplan, pursuant to the "General Indemnity Agreement", requested a defense from Shaw, who thereafter tendered the request to American. American refused to defend Meritplan. After further demands were denied, Meritplan hired its own defense counsel. In June, 1989, Shaw filed a reconventional demand against the Board and a third party demand against Davlin Paint Company, the manufacturer of the sealant and coating. In February, 1990, the Board amended its petition to add American as a party defendant. In August, 1990, Meritplan filed a cross-claim against Shaw and American seeking recovery of its defense and investigative expenses. Prior to trial, all claims were settled except Shaw's third party demand against Davlin and Meritplan's cross-claim against Shaw and American Indemnity. The third party demand was severed and tried separately from Meritplan's cross-claim, which is the subject of this appeal.
After trial, the court, in written reasons for judgment, held that, pursuant to the indemnity agreement, Shaw assumed the obligation of providing for the cost of defending Meritplan. The cost of this obligation, the court further reasoned, was covered under the American CGL policy issued to Shaw because the indemnity agreement qualified as a covered "incidental contract" as that term is defined in the policy. Accordingly, the court rendered judgment in favor of Meritplan and against Winnsboro Roofing, H.C. Shaw, Alice Shaw, and American in the amount of $18,246.67.
From this judgment, American appeals and assigns as error the trial court's holding that its CGL policy provided coverage for Shaw's obligation to indemnify Meritplan. It argues that several policy exclusions operate to preclude coverage of Shaw's obligation to indemnify Meritplan. Most prominently, American urges that a roofing operations exclusion, made effective by endorsement on June 30, 1986, applies to negate coverage. The exclusion provides as follows:
In consideration of the premium charged, property damage liability coverage is EXCLUDED for damages to any building or structure and/or the contents, furniture and fixtures, improvements and betterments of any building or structure caused by or aggravated by wind, hail, snow, rain, ice or any combination of these while the roof of the building or structure is being repaired or replaced by the insured.
Additionally, American relies upon exclusions (n) and (p) dealing with damages caused by the insured's products and exclusions (k) and (o) as amended by Section VI *414 of the Broad Form Comprehensive General Liability Endorsement.
American's reliance upon these policy exclusions is misplaced. The trial court determined that coverage was specifically based on the section of the policy dealing with contractual liability because Shaw had contractually assumed the obligation to indemnify Meritplan. The above exclusions would definitely preclude American's exposure for the property damages suffered if the conditions listed therein actually took place. However, American's potential liability for actual, substantive damages is not at issue. The only issue is American's potential exposure for the liability assumed by Shaw in the indemnity agreement with Meritplan.
Generally, the policy provides for coverage as follows:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage A. bodily injury or
Coverage B. property damage
to which the insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient,

. . . . .
Coverage is excluded for liability based on a contract or agreement as follows:
The insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner; ... (Emphasis ours)
Under this provision, if the insured assumes liability under an incidental contract, then, by negative implication, the liability assumed under that incidental contract is covered. The policy originally defined incidental contract as follows:
... any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, (5) elevator maintenance agreement, or (6) easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade; ...
The above quoted definition was extended by the Broad Form Comprehensive General Liability Endorsement "... to include any oral or written contract or agreement relating to the conduct of the named insured's business". Obviously, this expanded definition of incidental contract is broad enough in scope to include the indemnity agreement in which Shaw specifically assumed the responsibility to pay for Meritplan's attorney's fees and investigation costs.
In Merrick Construction Co. v. Hartford Fire Insurance Co., 449 So.2d 85 (La. App. 1st Cir.1984), writ denied, 450 So.2d 958 (La.1984), our brethren of the First Circuit were faced with a similar factual situation. Merrick sued Hartford, its CGL insurer, seeking coverage for costs related to the defense of a third party demand filed by the Department of Transportation and Development in a personal injury suit. The costs were expended on behalf of Merrick itself and its surety, St. Paul Fire and Marine Insurance Company. In holding that Merrick's obligation to St. Paul was covered under the Hartford policy, the court, at p. 88, reasoned as follows:
The liability of Merrick to St. Paul arises not just from the guaranty but from the legal provisions governing suretyship, and the general purpose of liability insurance is to cover this type of legal liability. We find that Merrick was responsible and that the general liability provisions covered this type of risk. The fact that St. Paul is a stranger to the *415 policy is irrelevant; it is the liability of Merrick that Hartford insured and was required to defend.
If the policy does not cover under the general liability coverage, however, it would be covered under the contractual liability section. The liability of Merrick has its origin in the road construction contract. The surety relationship between Merrick and St. Paul is incidental to and arises from the requirements of that contract. The responsibility of Merrick to St. Paul arises by operation of law in addition to the origin in the guaranty agreement. The liability was covered by the provision covering "contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance."
Likewise, Shaw's liability to Meritplan pursuant to the indemnity agreement was covered by the contractual liability provisions of the American policy. That contract was incidental to the roofing construction contract between Shaw and the Board. American's exposure is limited to the liability assumed by its insured, Shaw, under the contract to indemnify or hold harmless. Ordonez v. W.T. Grant Company, 297 So.2d 780 (La.App. 4th Cir.1974); W.S. McKenzie and H.A. Johnson, Insurance Law and Practice § 189, at 338-339, in 15 Louisiana Civil Law Treatise (1986). American did not owe Meritplan a direct defense as an insured under the policy because Meritplan did not qualify as such. American's liability is based on the fact that it undertook to cover liability assumed by its insured, Shaw, in an incidental contract.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by defendant-appellant, American Indemnity Company.
AFFIRMED.